FARMERS STORE & WAREHOUSE ASSOCIATION, INC. v.
M. W. BARLOW, DOING BUSINESS AS M. W. BARLOW
& COMPANY.[1]

April 8, 1921.

No. 22,133.

**Defenses not inconsistent.**

1. Record considered and *held* that the court was in error in holding the defenses inconsistent, but, since both defenses were litigated and fully submitted to the jury, no harm resulted to the defendant.

[1]Reported in 182 N. W. 447.

**Verdict supported by evidence.**

2. Evidence examined and *held* sufficient to sustain the verdict.

**Charge to jury.**

3. The issues involved were fully and fairly submitted to the jury by the general charge, and there was no error in the refusal of defendant's first and fifth requests to instruct.

**Objection to question sustained.**

4. There was no error in sustaining plaintiff's objection to the question asked plaintiff's secretary, upon cross-examination, in regard to diseases of potatoes, he not having been called as an expert witness upon the subject.

Action in the district court for Ramsey county to recover $916, the price of a carload of potatoes. Defendant interposed a counterclaim for $109.43. The case was tried before Hanft, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony defendant's motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $985.15. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Geo. A. Lewis,* for appellant.

*T. P. McNamara,* for respondent.

QUINN, J.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff is a corporation engaged in buying, selling and shipping potatoes at Willow River, in this state, and Homer Taubman is its secretary and manager. Defendant has been engaged in handling farm produce, including potatoes, in carload lots at Minneapolis during the past ten years. The Wholesale Co-operative Society of America, referred to in the record, is a corporation engaged in general merchandise, organizing co-operative stores and marketing produce in St. Paul, with John L. Whitaker as its general manager, during all the times here in question.

On October 25, 1918, the plaintiff loaded C. B. & Q. refrigerator car 36,313 with 450 sacks of potatoes at Willow River. The potatoes were taken from farmers' wagons, put over a screen with a 1⅞ inch mesh, culls

picked out, the potatoes sacked, weighed and placed in the car. There is testimony in the record tending to show that the sacks were clean and in proper condition; that the car was apparently clean and in good shape when loaded; what when it was loaded Mr. Taubman telephoned Mr. Whitaker at St. Paul and informed him that he had a carload of U. S. No. 1 potatoes for sale and asked him whether he could sell them, to which Mr. Whitaker replied that he thought he could; that the car was then shipped to the Wholesale Society of St. Paul upon an order bill of lading, which was mailed to the society, and that Whitaker thereafter met the defendant at St. Paul and offered to sell him the car of potatoes at $1.70 per cwt., and stated to the defendant that they were loaded at Willow River and would grade U. S. No. 1. The defendant testified that he bought the carload of potatoes from the wholesale society for $916, and that Whitaker told him at the time that as a part of such sale they would warrant the potatoes to grade U. S. No. 1 at destination, and he could have the right to inspect them before payment. In his testimony Mr. Whitaker denied entering into such a contract of sale with the defendant. The bill of lading was thereupon mailed by Whitaker to the defendant with an invoice from the wholesale society. On the following day the defendant had the car transferred to Minneapolis and then exchanged the bill of lading with the railroad company and rerouted the car to Peoria, Illinois, and later exchanged that bill of lading for a third and diverted the car to Cleveland, Ohio. On November 20 the car of potatoes was inspected by the government inspector at Cleveland and rejected as unmarketable. On November 29 the defendant returned the bill of lading to the wholesale society and refused to pay for the potatoes.

It is contended upon this appeal: (1) That the court erred in striking out paragraphs 5, 6, 7 and 8 of the amended answer; (2) that the verdict is not justified by the evidence; (3) that the court erred in refusing the defendant's first and fifth requested instructions, and (4) that the court erred in sustaining plaintiff's objection to the question asked the witness Taubman, on cross-examination, in regard to diseases of potatoes. These assignments will be considered in the order stated.

In his amended answer defendant alleges that he never had any dealings with plaintiff concerning the potatoes in question and denies that plaintiff was the owner thereof at the time of the alleged sale, and then

affirmatively alleges that he purchased the same from the Wholesale Society, that it warranted the potatoes to be No. 1 grade, and further pleaded fraud on the part of the society in the sale. The court required defendant to elect upon which theory of the answer he would rely. Counsel then stated that defendant would rely upon the claim that defendant never purchased the potatoes from plaintiff and that plaintiff was not the owner thereof at the time of the alleged sale. Whereupon the court ordered the allegations contained in paragraphs 5, 6, 7 and 8 stricken out, to which defendant took exception. As the trial court quite properly stated, if the defendant did not buy the potatoes from plaintiff, then the question of fraud entirely disappears, and if he did buy them from plaintiff, then the amendment was unnecessary. However, the defendant was permitted upon the trial to offer proofs under all the allegations proposed, and the issues raised thereby were fully submitted to the jury, under very fair and complete instructions. Evidence of the condition of the potatoes at the time of shipment, the manner in which they were sacked and loaded, their condition at the destination, the cause of their poor condition, the statements and representations made at the time of the sale, were all gone into and fully submitted to the jury. The defendant could fairly ask no more favorable trial.

It is undisputed that, at the time of the sale of the car of potatoes, they were in St. Paul. The bill of lading was turned over to defendant. From that time on defendant had absolute control of the car, which carried with it the right of inspection, the right of sale and the diversion of the shipment. There was testimony tending to show that the transaction between plaintiff and the Wholesale Society of St. Paul was a mere consignment for sale. This phase of the case was fully and fairly, under the proofs, submitted to the jury and determined in accordance with the contention of plaintiff, and its conclusions are amply sustained by evidence. There was no dispute as to the kind of potatoes claimed to have been loaded in the car. No inspection was made until the car arrived in Cleveland some four weeks after it was loaded. What the agreement of sale was, of course was for the jury to determine from the evidence.

In its charge the court fully and clearly informed the jury as to what would constitute a sale under the facts as shown by the proofs. Upon this feature of the case there was no error in refusing the requests to charge.

There was no error on the part of the court in sustaining the objection to the questions asked the witness Taubman on cross-examination with reference to diseases of potatoes. The witness was not called as an expert. He testified only as to the apparent condition of the potatoes at the time of loading. We are satisfied that defendant had a fair trial.

Affirmed.